| | |
|---|---|
| 1 | BENJAMIN B. WAGNER<br>United States Attorney |
| 2 | JASON HITT<br>Assistant United States Attorney |
| 3 | 501 I Street, Suite 10-100<br>Sacramento, CA 95814 |
| 4 | Telephone: (916) 554-2700<br>Facsimile: (916) 554-2900 |
| 5 | |
| 6 | Attorneys for Plaintiff<br>United States of America |

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | CASE NO. 2:14-CR-0310 KJM |
| | Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| | v. | |
| CLORENZO GRIFFIN, et al., | | |
| | Defendants. | |

The United States respectfully submits this sentencing memorandum in anticipation of the judgment and sentencing for defendant Clorenzo Griffin currently set for March 9, 2016. The United States asks that the Court accept the plea agreement pursuant to Rule 11(c)(1)(C) and impose a sentence of 144 months in prison.

A sentence of 12 years is supported by a number of factors unique to this case. At the outset, the defendant's position as a Deputy United States Marshal at the time of his crimes stands apart from most defendants sentenced by this Court. As a member of law enforcement, he abused the public trust placed in sworn peace officers. PSR ¶ 19. This case is also unique because it is undisputed that the defendant planned, financed, and participated in the robbery of 24 pounds of marijuana from drug dealers on October 11, 2014. PSR ¶ 20. Indeed, without Mr. Griffin, the crime would never have occurred. Neither of his co-defendants had the resources or vision to plan the conspiracy in this case. The conspiracy here required: a cross-county flight, obtaining hotel rooms, procuring firearms, ballistic

1

vests, and a rental car, as well as the moxie to set up and rob marijuana traffickers. Perhaps most troubling about this episode is what Mr. Griffin did after law enforcement began pursuing the robbery crew. With Mr. Griffin at the wheel of a rented Jeep, he was pursued by a California Highway Patrol Officer. He drove evasively and engaged in a dangerous flight that created a substantial risk of death or bodily injury to the public and the pursuing officer. PSR ¶ 21. Further compounding this dangerous behavior, as the pursuing CHP officer drew closer to Mr. Griffin, the defendant drew his firearm. This caused a Yolo County Sheriff's deputy to fire at the defendant in order to halt his aggression toward the pursuing CHP officer. PSR ¶ 5. The events that day could very easily have turned deadly.

These factors all counsel in favor of a significant sentence in order to reflect the seriousness of the offense, promote respect for the law, provide Mr. Griffin with a just punishment and deter others who may engage in such dangerous conduct. 18 U.S.S.C. § 3553(a).

The Probation Officer correctly finds a guideline range of 87 to 108 months in prison. PSR ¶ 87. This range, however, does not adequately capture the seriousness of the defendant's conduct or the potential exposure he faced in this case. If the Court accepts this agreement and sentences the defendant within the range of 120 to 144 months in prison, the United States will move to dismiss Counts Two and Three. This is significant because Count Three carries a mandatory consecutive sentence of 7 years in prison. PSR ¶ 77-78. If the United States insisted on a guilty plea or trial of Count Three, then Mr. Griffin's sentencing exposure spikes upward to between 14 and 16 years in prison. Thus, the parties believe a sentence within the range of 120 to 144 months is an appropriate disposition in this case, with the United States supporting a sentence at the high end of this range based upon the multiple aggravating factors, egregiousness of the conduct, and seriousness of the offense.

A sentence of 144 months would also be consistent and appropriate when compared with the sentences imposed on co-conspirators Rackley and Jamison. In particular, this Court sentenced Mr. Jamison to 87 months in prison and Mr. Rackley to 72 months in prison. Mr. Jamison was Mr. Griffin's close friend and had fallen on hard times. Mr. Jamison recruited his young nephew, Mr. Rackley, into the conspiracy. Both co-conspirators were less culpable and less sophisticated than Mr. Griffin. He is the undisputed leader and *sine qua non* of this violent conspiracy.

1       The United States acknowledges that Mr. Griffin endured a difficult childhood. He is also unlikely to reoffend because he has no past criminal history and possesses education and skills that could support a productive life after incarceration. On balance, however, the United States believes a sentence of 12 years is sufficient but not greater necessary for Mr. Griffin.

      One final note. To the extent the defendant's sentencing memorandum seeks a "downward variance," see Def. Sent. Memo at 6-9, such a request may be inconsistent with the terms of the plea agreement reached between the parties. The United States may be mistaken in this reading of the defendant's memorandum, but the government reserves its right to address any material breach of the agreement if further arguments are made in favor of a sentence outside the range contemplated by the agreement.

BENJAMIN B. WAGNER
United States Attorney

Dated: March 3, 2016       By: /s/Jason Hitt
                                                        Jason Hitt
                                                        Assistant United States Attorney